UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALEXANDER WOOD, | : | Civil Action No. 3:02-cv-2058(JBA) |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| FEDERAL BUREAU OF | : | |
| INVESTIGATION and | : | |
| DEPARTMENT OF JUSTICE, | : | |
| Defendants | : | APRIL 14, 2004 |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT AND FOR RECONSIDERATION

#### I. INTRODUCTION.

The plaintiff in this Freedom of Information Act [FOIA] appeal respectfully submits that, in denying the Plaintiff's Motion for Continuance and Discovery Pursuant to Federal Rule of Civil Procedure 56 (f) ("discovery motion") [Doc. # 34], this Court relied on two decisions – *Iglesias v. CIA,* 525 F.Supp. 547 (D.D.C. 1981) and *Exxon Corp. v. F.T.C.,* 476 F.Supp. 713 (D.D.C. 1979) – that embody erroneous interpretations of controlling Supreme Court precedents. Ruling on motions ("Ruling") [Doc. # 63] 24. The essential problem with the reasoning of *Exxon,* which appears to be the basis for the passage from *Iglesias* quoted by this Court in the Ruling, is that it interprets the references to express adoption and incorporation by reference of an advisory memorandum in a final agency decision in *NLRB v. Sears, Roebuck & Co.,* 421 U.S.132, 161 (1975), as nullifying only the "exemption for deliberative predecisional information." *Exxon, supra,* 476 F.Supp. at 725. In fact, *Sears* plainly states that express

**ORAL ARGUMENT REQUESTED**
**TESTIMONY NOT REQUIRED**

adoption or incorporation by reference nullifies the applicability of "Exemption 5," a

reference to 5 U.S.C. Section 552 (b) (5), which makes the FOIA inapplicable to "inter-

agency or intra-agency memorandums or letters which would not be available by law to a

party other than an agency in litigation with the agency." Earlier in the *Sears* decision,

the Supreme Court had stated that it was clear that "Congress had the attorney's work-

product privilege specifically in mind when it adopted Exemption 5 ...." *Id.* 154. Thus,

the Supreme Court plainly intended the attorney's work-product privilege to be included

in its later reference to "Exemption 5." Nothing in *Federal Open Market Committee v.*

*Merrill,* 443 U.S. 340 (1979) alters that conclusion.

     In addition to citing the *Iglesias* and *Exxon* decisions, this Court said in denying

the plaintiff's request to conduct discovery on the adoption issue that the facts did not

support the plaintiff's argument. Ruling [Doc. # 63] 24. The Court went on to state that

the plaintiff "suggests only that the DOJ memo may have been incorporated in the

decision of the FBI's OPR Adjudication Unit, because the FBI may have reviewed the

DOJ memo in preparing its decision." Ruling [Doc. # 63] 24-25. (The "DOJ memo" is a

memo dated December 2, 1997 by James Cooper and John Scott, Trial Attorneys, Public

Integrity Section to Lee Radek, Chief, Public Integrity Section. Ruling [Doc. #63] 5.)

Respectfully, that is not and never has been the plaintiff's claim. Rather, the plaintiff's

claim was and is that if Public Integrity Section personnel permitted Federal Bureau of

Investigation (FBI) personnel to read the DOJ Memo, that **act** would constitute adoption

of the reasoning expressed in the DOJ Memo as the statement of reasons for the decision

not to prosecute the FBI Special Agents whose conduct was at issue.

2

The plaintiff also requests in this memorandum that the Court take judicial notice of a section of the United States Attorneys' Manual that increases the likelihood that such an act took place and adds additional support to the hypothesis that the DOJ Memo has been adopted as the statement of reasons for the decision by the Department of Justice ("Department") not to prosecute in this case. The plaintiff requests that the Court take judicial notice of certain other documents as well, as spelled out in the Fourth Declaration of Alexander Wood ("Fourth Wood Declaration"), attached at Tab A.

## II. BACKGROUND.

The DOJ Memo is one of the documents the plaintiff is seeking access to in this case. Complaint [Doc. # 1] Pars. 66-68, 70. See also Request for Relief section of Complaint Par. 3. The defendants filed their *Vaughn* index on the issue of the DOJ Memo on May 28, 2003 in the form of the Declaration of Joseph S. Beck ("Beck Declaration") [Doc. # 14]. The defendants filed a motion for summary judgment encompassing all outstanding issues in this case, including the issue of whether the FOIA required disclosure of the DOJ Memo, on June 26, 2003 [Doc. # 19]. On that same date, the plaintiff filed a motion for partial summary judgment that sought judgment on certain issues that did not include the DOJ Memo [Doc. # 24]. The plaintiff subsequently filed the above-mentioned discovery motion on July 25, 2003 [Doc. # 34]. In that motion, the plaintiff sought permission to conduct discovery on 11 questions that he contended were relevant to the issue of whether the FOIA required disclosure of the DOJ Memo. Question 7 was as follows:

> Was the Public Integrity Section [DOJ] [M]emo formally or informally adopted as the defendant Department of Justice's statement of reasons for the decision not to prosecute the FBI Special Agents whose conduct was at issue?

3

The plaintiff's motion was accompanied by a memorandum in support, also dated and filed July 25, 2003 ("memorandum in support of discovery") [Doc. # 35], to which was attached the Declaration of Christian Miller and two articles Miller had written for the *New Haven Register*. The defendants filed a memorandum in opposition to the discovery motion dated August 15, 2003 [Doc. # 45], to which was attached the Supplemental Declaration of Joseph S. Beck ("Supplemental Beck Declaration") and the Declaration of Michel (sic) J. Wolf ("Wolf Declaration"). Pursuant to an extension of time nunc pro tunc granted by the Court, the plaintiff subsequently filed the Second Declaration of Alexander Wood ("Second Wood Declaration"), dated and filed August 29, 2003, in support of the discovery motion [Doc. # 52]. The plaintiff filed a reply to the defendants' memorandum in opposition to the discovery motion, dated and filed September 4, 2003 [Doc. # 54]. The defendants next addressed the issue of whether the FOIA required disclosure of the DOJ Memo in a Notice of Status dated September 29, 2003 [Apparently not docketed]. The plaintiff filed a reply to that notice of status in a document dated October 8, 2003 and filed October 9, 2003 [Doc. # 59]. In addition, the plaintiff's three motions to strike all touched on claims related to the issue of whether the FOIA requires disclosure of the DOJ Memo. [Docs. 39, 43, and 47.]

The Court denied the plaintiff's discovery motion in its ruling on pending motions dated March 31, 2004. Ruling [Doc. # 63] 42. The Court also denied the plaintiff's three motions to strike, in part on grounds of mootness. Ruling [Doc. # 63] 42, 14 n. 5, 16 n. 6. The Court addressed the question quoted above in section III.A.3 of the Ruling, at pages 22-25, and concluded:

4

"Incorporation by reference" thus is not a viable theory in this case, and Wood's request for discovery on this issue is accordingly denied.

Ruling [Doc. # 63] 25.

### III. DISCUSSION.

A. IT IS APPROPRIATE FOR THE COURT TO RECONSIDER WHETHER ADOPTION OF THE DOJ MEMO AS THE RATIONALE FOR THE DECISION TO DECLINE PROSECUTION WOULD AFFECT THE APPLICABILITY OF THE ATTORNEY WORK PRODUCT PRIVILEGE.

"Rule 59(e) motions are 'aimed at *reconsideration*, not initial consideration.'"

*F.D.I.C. v. World University Inc.,* 978 F.2d 10, 16 (1st Cir. 1992), quoting *Harley-Davidson Motor Co., Inc. v. Bank of New England,* 897 F.2d 611, 616 (1st Cir. 1990),

citing *White v. New Hampshire Dept. of Employment Sec.,* 455 U.S. 445, 451 (1982).

(Emphasis in original.) "Thus parties should not use them to 'raise arguments which

could, and should, have been made before judgment issued.'" *World University, supra,*

978 F.2d at 16 (Citations omitted.). "Motions under Rule 59 (e) must either clearly

establish a manifest error of law or must present newly discovered evidence. ... They

may not be used to argue a new legal theory." *World University, supra,* 978 F.2d at 16,

citing *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986).

In support of his discovery motion, the plaintiff has argued only that formal or

informal adoption of the DOJ Memo as the Department's statement of reasons for the

decision to decline prosecution would bring it within an exception to the deliberative

process privilege. Memorandum in support of discovery [Doc. # 35] 20-22.

The defendants, however, broached the issue of the relationship between adoption

and the attorney work-product privilege in their Memorandum in Opposition to Plaintiff's

Motion for a Continuance and Discovery ("Defendants' opposition to discovery"):

5

> Finally, even if the Radek [DOJ] Memo were "adopted" as
> plaintiff speculates it might have been, thus rendering the deliberative-
> process privilege inapplicable, the memo still would be exempt from
> disclosure under the wholly independent work-product component of
> Exemption 5.

[Doc. # 45] 9, citing *Iglesias, supra,* 525 F.Supp. at 559, *Federal Open Market*

*Committee v. Merrill,* 99 S.Ct. 2800, 2812, n. 23 (1979), *Urbide v. Executive Office for*

*United States Attorneys,* No. 87-1836, 1989 U.S. Dist. LEXIS 5691, at **6-7. The

defendants reiterated this point on the following page of their memorandum, this time

quoting some of the same language from *Iglesias* that was later quoted in this Court's

Ruling [Doc. # 63]. Defendants' opposition to discovery [Doc. # 45] 10. Ruling [Doc. #

63] 24, both citing *Iglesias, supra,* 525 F.Supp. at 559.

   In its Ruling, the Court observed that "[t]he Government has asserted that the

'incorporation by reference' exception does not apply to work product." [Doc. # 63] 23.

The Court went on to quote language from the *Sears* decision relating to the legal effects

of express adoption or incorporation by reference of "an intra-agency memorandum

previously covered by Exemption 5 in what would otherwise be a final opinion ..."

Ruling [Doc. # 63] 23, citing *Sears [N.L.R.B.], supra,* 421 U.S. at 161. The Court

discussed judicial precedents on this issue for most of two pages, concluding with a

quotation from *Iglesias.* Ruling [Doc. # 63] 23-24.

   Thus, the Court has already considered whether express adoption or incorporation

by reference would nullify the attorney work product privilege. Reconsideration of the

issue at this time would be just that – it would not constitute "initial consideration."

*World University, supra,* 978 F.2d at 16. Moreover, the plaintiff respectfully submits that

the passage of *Iglesias* quoted in this Court's Ruling, [Doc. # 63] 24, constitutes "a

manifest error of law." *Id.* There is, of course, the issue of whether the plaintiff could or should have raised this issue before judgment. The plaintiff is, however, a non-lawyer pro se litigant and, quite frankly, did not fully understand the complex interplay discussed in *Sears* between the "affirmative" provisions of the FOIA and Exemption 5 until he carefully studied this Court's Ruling [Doc. # 63] together with the decisions cited in it. See *Sears, supra,* 421 U.S. 150-162. Also, quite frankly, the plaintiff failed until recently to think of one possible scenario under which a possible adoption of the DOJ Memo as the Department's statement of reasons for its decision to decline prosecution could rise to the level of "express" adoption. Likewise the plaintiff discovered a relevant section of the United States' Attorneys' Manual months after his deadline to file his memorandum in support of discovery. Under these conditions, the plaintiff respectfully submits, the Court may appropriately reconsider its conclusions on this issue despite the deficiency of the pro se plaintiff's previous arguments.

There is precedent for such an approach. Some U.S. circuit courts of appeals, when considering FOIA cases, have addressed legal issues not raised previously. *Carter v. U.S. Dept. of Commerce,* 830 F.2d 388, 390 n. 8 (D.C. Cir. 1987). ("The public does have an interest in the proper functioning of PTO [Patent & Trademark Office] disciplinary investigations, and although appellant may have raised only private interests below, we consider this public interest in disclosure as well.") See also *Trans-Pacific Policing Agreement v. U.S. Customs,* 177 F.3d 1022, 1026-1029 D.C. Cir. 1999) (remanding to District Court to make segregability finding even though appellants had failed to raise segregability issue in District Court), U.S. Department of Justice, Freedom of Information Act Guide, 2002, [attached at Tab A-1], Litigation Considerations, n. 531,

7

citing *Farese v. United States Dep't of Justice,* No. 86-5528, slip op. At 9-10 (D.C. Cir.

Aug. 12, 1987) (finding plaintiff not estopped from challenging use of specific

exemptions at appellate stage when he argued at trial court level merely that agency had

failed to meet its burden of establishing documents exempt). (The FOIA Guide is cited

here because the plaintiff has been unable to obtain a copy of *Farese* from databases

available to him.)

In *Federal Open Market Committee,* both sides made certain factual claims for

the first time before the Supreme Court. 443 U.S. at 363-364. Rather than hold that these

claims were procedurally barred because not raised initially before the District Court, the

Supreme Court remanded the case to the District Court for "the development of a proper

record." *Id.* 364. Thus a flexible procedural approach can be appropriate.

B.  THIS COURT IS NOT BOUND BY THE *IGLESIAS* AND *EXXON* DECISIONS.

The *Iglesias* and *Exxon* decisions were issued by United States District Courts in the

District of Columbia Circuit. As stated in *Security Bank S.S.B. & Subsidiaries v. C.I.R..,*

116 F.3d 302 (7th Cir. 1997):

> This case requires us to decide an issue that, although not decided
> in this circuit, has already confronted our colleagues in two other circuits.
> ... These holdings do not bind us. Indeed, we have the obligation to
> exercise our independent judgment. Nevertheless, we owe the efforts of
> our colleagues in the other circuits our respectful and careful study.

*Id.* 303. (Citations omitted.)

Although this Court is not bound by D.C. District Court decisions, needless to say

it is bound by United States Supreme Court precedents. Thus, if the plaintiff is correct

that the *Iglesias* and *Exxon* decisions are at odds with applicable Supreme Court

precedents, this Court would be obligated to rule differently than it has, if it decides to

8

reconsider its Ruling.

C. THE SUPREME COURT'S *SEARS* DECISION PLAINLY CONCLUDES THAT EXPRESS ADOPTION OF A RECOMMENDATION AS THE RATIONALE FOR A "FINAL OPINION," OR THE RECOMMENDATION'S INCORPORATION BY REFERENCE IN SUCH AN OPINION, ELIMINATES BOTH THE DELIBERATIVE PROCESS AND WORK PRODUCT PRIVILEGES. NOTHING IN *FEDERAL OPEN MARKET COMMITTEE* DISTURBS THAT CONCLUSION.

After reviewing several court decisions related to attorney work product and

adoption, this Court said the following in its Ruling:

> Interpreting these principles, several courts have concluded that "even if a document is a final opinion or is a recommendation which is eventually adopted as the basis for agency action, it retains its exempt status if it falls properly within the work-product privilege.... [A]ny argument to the effect that the attorney's opinions in question may have become the basis for final agency action is irrelevant for the purposes of the work-product privilege." Iglesias v. CIA, 525 F.Supp. 547, 559 (D.D.C. 1981); see also Exxon Corp. v. F.T.C., 476 F.Supp. 713, 726 (D.D.C. 1979).

*Iglesias* does not explain the basis for those conclusions. But the *Exxon* decision does.

476 F.Supp. at 724-727. In *Exxon*, a District of Columbia District Court noted that the

D.C. Circuit Court of Appeals had held:

> Although we thus agree with the district court that the documents in these categories are work product, it does not follow that they may be withheld. *Sears* makes it clear that such memoranda lose the protection of exemption 5 to the extent that they have been incorporated by reference in a nonexempt 'final opinion.'

*Exxon, supra,* 476 F.Supp. at 725, citing *Bristol-Meyers Co. v. F.T.C.,* 598 F.2d 18, 29

(D.C. Cir. 1978).

Nevertheless, the *Exxon* court proceeded to summarize the relevant section of

*Sears* as follows:

> The Supreme Court in *Sears* did hold that "if an agency chooses *expressly* to adopt or incorporate by reference" a memorandum otherwise exempt as predecisional into a "final opinion," within the meaning of (Section) 552(a)(2)(A), that memorandum may be withheld only pursuant

9

to some exemption other than the (b)(5) exemption for deliberative predecisional information. The Supreme Court's opinion in *Sears* did not hold, however, that a memorandum privileged as attorney "work product," and therefore exempt under (b)(5), would lose its exemption if it fell within the application of (Section) 552(a)(2), whether directly or by express incorporation or adoption.

476 F.Supp. at 725. (Italics in original.)

This reading of *Sears* is untenable and directly contrary to the D.C. Circuit's interpretation in *Bristol-Meyers*. The actual language of *Sears* is as follows:

> Thus we hold that, if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5.

*Sears, supra,* 421 U.S. at 161 (Italics in original.). *Sears* plainly refers to "Exemption 5" – not to the "(b)(5) exemption for deliberative predecisional information."

There can be no doubt that the phrase "Exemption 5" in *Sears* includes the attorney-work product privilege. The passage of *Sears* quoted above comes seven pages after the Supreme Court stated it was clear "that Congress had the attorney's work-product privilege specifically in mind when it adopted Exemption 5 and that such a privilege had been recognized in the civil discovery context by prior case law." *Id.* 154. Thus the reference to Exemption 5 in the above-quoted passage is not susceptible to the explanation the Supreme Court subsequently gave for limiting the application of certain comments it made concerning Exemption 5 at the end of section III.A.i. of the *Sears* decision, 421 U.S. at 153-154, i.e., that they "were made in the course of a discussion of the privilege for predecisional communications." *Federal Open Market Committee, supra,* 443 U.S. at 360-361 n. 23 (1979).

10

The *Exxon* court followed its summary of the *Sears* holding on express adoption or incorporation by reference with the statement, "Whatever ambiguity may have been detected by our Court of Appeals concerning this point was dispelled by the Supreme Court in *Federal Open Market Committee of the Federal Reserve v. Merrill* ...." *Exxon, supra,* 476 F.Supp. at 725. This claim, too, is untenable. *Federal Open Market Committee* concludes that "Exemption 5 incorporates a qualified privilege for confidential commercial information, at least to the extent that this information is generated by the Government itself in the process leading up to awarding a contract." 443 U.S. at 360. The Supreme Court was not faced with an issue involving the attorney work product privilege in that case. In fact, it noted that "[t]he FOMC does not contend that the Domestic Policy Directives are protected by either the privilege for predecisional communications or the privilege for an attorney's work product." *Id.* 353. The closest the Supreme Court came to addressing work product in that decision was in the following passage:

> It should be obvious that the kind of mutually exclusive relationship between final opinions and statements of policy, on the one hand, and predecisional communications, on the other, does not **necessarily** exist between **final statements of policy** and other Exemption 5 privileges. In this respect, we note that Sears itself held that a memorandum subject to the affirmative disclosure requirement of **552 (a) (2)** was nevertheless shielded from disclosure under Exemption 5 because it contained a privileged attorney's work product. 421 U.S., at 160.

*Federal Open Market Committee,* 443 U.S. at 361 n. 23 (Bold-face type added.). The second sentence of that passage is merely a summary of a section of *Sears* that will be discussed below. It plainly stops far short of a reversal of the principle clearly stated in *Sears* with respect to express adoption or incorporation by reference rendering Exemption 5 inapplicable.

11

Moreover, even if one could read into *Federal Open Market Committee* some change in the Supreme Court's attitude toward the legal effect of adoption of a work product document as the explanation for a final opinion, that would clearly constitute dictum rather than binding precedent. *Federal Open Market Committee* was not about work product.

The D.C. Circuit's *Bristol-Meyers* decision is not the only one that has concluded that adoption of a document formerly shielded from disclosure by the attorney work product privilege as the rationale for an agency's final decision nullifies its Exemption 5 protection. The 7th Circuit has stated:

> With regard to the attorney-client privilege, this doctrine applies where litigation is contemplated and the document represents attorney work product. Where litigation is foreclosed as an option and the agency expressly chooses to make use of legal memoranda in its final decision, this choice eliminates any claim of attorney work product privilege for the expressly adopted document. Under these circumstances, such documents "are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public."

*Niemeier v. Watergate Spec. Prosecution Force,* 565 F.2d 967, 974 (7th Cir. 1977), quoting *Sterling Drug Inc. v. F.T.C.,* 450 F.2d 698, 708 (1971) (Other footnotes and citations omitted.) As to the references to both the attorney-client and attorney work product privileges in the passage quoted above, the court explained in a footnote, "Although the attorney-client privilege is broader than simply the work product privilege, this narrower aspect was the focus in *Sears* and relates more closely to the FOIA than the broad privilege for all communications between attorney and client." *Niemeier, supra,* 565 F.2d at 974 n. 23 (Citations omitted.).

In conclusion, the Supreme Court's decisions in *Sears* and *Federal Open Market Committee* do not support the *Exxon* court's conclusion that the express adoption or

12

incorporation by reference exception to Exemption 5 is limited to "deliberative

predecisional information." *Exxon, supra,* 476 F.Supp. at 725. Nor do the Supreme Court

precedents support the *Iglesias* court's conclusion that "even if a document is a final

opinion or is a recommendation which is eventually adopted as the basis for agency

action, it retains its exempt status if it falls properly within the work-product privilege."

525 F.Supp. at 559, citing *Federal Open Market Committee, supra,* 443 U.S. at 360 n. 23,

*Exxon, supra,* 476 F.Supp. at 724-726. The latter conclusion is a "manifest error of law"

that was incorporated in this Court's Ruling, [Doc. # 63] 24, and which satisfies one of

the requirements for granting a motion to alter or amend a judgment pursuant to Federal

Rule of Civil Procedure 59 (e). *World University, supra,* 978 F.2d at 16.

D.   THE *IGLESIAS* AND *EXXON* COURTS ALSO ERRED IN CONCLUDING THAT
     A "FINAL OPINION" THAT IS ATTORNEY WORK PRODUCT IS EXEMPT
     FROM DISCLOSURE UNDER THE FOIA.

The Supreme Court in *Sears* found support for its analysis of Exemption 5 in the

"affirmative portion" of the FOIA, specifically 5 U.S.C. Section 552 (a) (2). *Sears, supra,*

421 U.S. at 153.

**5 U.S.C. Section 552 (a) (2)** requires each federal agency to make certain documents

available for "public inspection and copying." This is commonly referred to as the

"reading room" provision of the FOIA. U.S. Department of Justice, Freedom of

Information Act Guide, May 2002, "FOIA Reading Rooms" [attached at Tab A-2] 1.

5 U.S.C. Section 552 (a) (2) now requires that records created on or after November

1, 1996 be made available, "including by computer telecommunications" or "other

electronic means." In practice this means that such documents are now published on

federal agencies' FOIA sites on the World Wide Web. *Id.* [Tab A-2] 2. When *Sears* was

13

decided in 1975, three distinct types of records were included in this paragraph, listed in separate subparagraphs. These subparagraphs remain, and two others were added in the 1996 amendments. The original three subparagraphs are:

• **5 U.S.C. Section 552 (a) (2) (A)**, which lists "final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases."

• **5 U.S.C. Section 552 (a) (2) (B)**, which lists "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register."

• **5 U.S.C. Section 552 (a) (2) (C)**, which lists "administrative staff manuals and instructions to staff that affect a member of the public."

*Sears* explains that 5 U.S.C. Section 552 (a) (2) "represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law." 421 U.S. at 153, citing H. R. Rep. No. 1497, p. 7. *Sears* continues:

> We should be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U.S.C. (Section) 552 (a) (2); and with respect at least to "final opinions," which not only invariably explain agency action already taken or an agency decision already made, but also constitute "final dispositions" of matters by an agency, see *infra*, at 158-159, we hold that Exemption 5 can never apply.

421 U.S. at 153-154 (Footnote omitted.).

The Supreme Court explained in *Sears* that the Advice and Appeals Memoranda directing the filing of complaints, which it permitted to remain protected from FOIA disclosure requirements by Exemption 5, were **not** "final opinions," an apparent reference to the use of that phrase in 5 U.S.C. Section 552 (a) (2) (A). *Id.* 160. The Supreme Court left open only the possibility, found by the District Court, that such memoranda are "instructions to staff that affect a member of the public," an apparent

14

reference to the use of that phrase in 5 U.S.C. Section 552 (a) (2) (C). *Id.* The paragraph

of *Sears* containing these observations reads as follows:

> We recognize that an Advice or Appeals Memorandum directing
> the filing of a complaint–although representing only a decision that a legal
> issue is sufficiently in doubt to warrant determination by another body—
> has many of the characteristics of the documents described in 5 U. S. C.
> (Section) **552 (a) (2).** Although not a "final opinion" in the "adjudication"
> of a "case" because it does not effect a "final disposition," the
> memorandum does explain a decision already reached by the General
> Counsel which has real operative effect—it permits litigation before the
> Board; and we have indicated a reluctance to construe Exemption 5 to
> protect such documents. *Supra,* at 153. We do so in this case only because
> the decisionmaker—the General Counsel—must become a litigating party
> to the case with respect to which he has made his decision. The attorney's
> work-product policies which Congress clearly incorporated into
> Exemption 5 thus come into play and lead us to hold that the Advice and
> Appeals Memoranda directing the filing of a complaint are exempt
> whether or not they are, as the District Court held, "instructions to staff
> that affect a member of the public."

421 U.S. at 160. (Footnote omitted. Bold-face type added.) It is important to understand

in this context that "5 U.S.C. Section 552 (a) (2)" refers to the entire paragraph of the

FOIA requiring each agency to make certain documents available for "public inspection

and copying," which includes the documents described in 5 U.S.C. Section 552 (a) (2)

(B) and (C) in addition to "final opinions" described in 5 U.S.C. Section 552 (a) (2) (A).

The final sentence of footnote 23 in *Federal Open Market Committee,* quoted

above in section III.C. of this memorandum, is nothing more than a summary of this

paragraph of *Sears.* It does not disturb the *Sears* holding that Exemption 5 can never

apply to "final opinions."

In essence, what the Supreme Court did in *Federal Open Market Committee* was

to again overcome the reluctance it expressed in *Sears* to construe Exemption 5 to apply

to documents described in 5 U.S.C. Section 552 (a) (2) **other than** "final opinions."

*Sears, supra,* 421 U.S. at 153-154. In *Federal Open Market Committee* it overcame that reluctance with respect to the Domestic Policy Directives, which the District Court had held to be "statements of general policy." *Federal Open Market Committee,* 443 U.S. at 360-361, n. 23. The reference to "final statements of policy," printed in boldface type in the except of footnote 23 quoted above in section III.C. of this memorandum, strongly suggests that the Supreme Court believed Exemption 5 might apply in the circumstances of that case to "statements of policy" within the meaning of 5 U.S.C. Section 552(a)(2)(B) – not that it had changed the *Sears* holding that Exemption 5 could never apply to the "final opinions" described in 5 U.S.C. Section 552 (a) (2) (A).

Once again, even if the Supreme Court's decision in *Federal Open Market Committee* could somehow be interpreted as expressing the view that "final opinions" can be protected from mandatory disclosure as "attorney work product," that view would represent dictum rather than binding precedent because attorney work product was not at issue in the case.

Thus, the *Exxon* court erred when it stated that "a document may be exempt as attorney 'work product' under exemption (b)(5) notwithstanding that it is also a 'final opinion', or has been incorporated by reference into a 'final opinion' within the meaning of (Section) 552(a)(2)(A)." *Exxon, supra,* 476 F.Supp. at 726, citing *Sears, supra,* 421 U.S. at 160. The *Iglesias* court repeated that error in the passage quoted by this Court in its Ruling [Doc. # 63] 24. Again, this represents a "manifest error of law." *World University, supra,* 978 F.2d at 16. If the issue of whether the DOJ Memo is a "final opinion" within the meaning of 5 U.S.C. Section 552 (a) (2) (A) proves important to the Court in the resolution of this case, that error would satisfy one of the requirements for

16

granting a motion to alter or amend a judgment pursuant to Federal Rule of Civil

Procedure 59 (e). As will be discussed in the next section, however, the plaintiff does not

view the issue of whether the DOJ Memo is a "final opinion" within the meaning of 5

U.S.C. Section 552 (a) (2) (A) as crucial to this case.

E.  EVEN IF THE DOJ MEMO IS NOT A "FINAL OPINION" WITHIN THE
    MEANING OF 5 U.S.C. SECTION 552 (a) (2) (A), ITS ADOPTION AS THE
    BASIS FOR THE DECISION TO DECLINE PROSECUTION ELIMINATES ITS
    EXEMPTION 5 PROTECTION FROM MANDATORY DISCLOSURE UNDER
    THE FOIA.

As noted above, the sentence in *Sears* dealing with express adoption or incorporation

by reference refers to "what would otherwise be a final opinion." 421 U.S. at 161.

In *Sears,* the Supreme Court did not decide "whether a public prosecutor makes 'law'

when he decides not to prosecute or whether memoranda explaining such decisions are

'final opinions,' ...." 421 U.S. at 156, n. 22. In *Niemeier,* the 7th Circuit held that an

attorney's memorandum initially regarded as nondisclosable under Exemption 5 "lost this

exempt status when it was quoted and expressly adopted or incorporated by reference" by

the report of the Watergate Special Prosecution Force. 565 F.2d at 974. But the *Niemeier*

court also stated:

> We wish to emphasize that we view our conclusion regarding this
> construction of 5 U.S.C. (Section) 552(a)(2)(A) on the facts presented here
> to be very narrow. That is, although we hold on the facts of this case that
> the WSPF Report is a final disposition for purposes of the FOIA, we come
> to this conclusion "[w]ithout deciding whether a public prosecutor makes
> 'law' when he decides not to prosecute or whether memoranda explaining
> such decisions are 'final opinions' ...."

*Id.* 972, citing *Sears, supra,* 421 U.S. at 156 n. 22. The plaintiff has found no case

deciding the general issue of whether memoranda explaining decisions to decline

17

prosecution ("final declination memos") are "final opinions" within the meaning of 5 U.S.C. Section 552 (a) (2) (A).

In the absence of such a precedent, it is necessary to analyze the statutory language. *Sears* is helpful in this regard, pointing out that the FOIA, 5 U.S.C. Section 552, is part of the Administrative Procedure Act (APA). 421 U.S. at 158. As *Sears* notes, the APA defines "adjudication" as "agency process for the formulation of an order." 5 U.S.C. Section 551 (7). "Order" is defined as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. Section 551 (6).

The statutory language could be read as supporting a conclusion that a decision to decline prosecution is an "order" in that it is "a final disposition … of an agency in a matter other than rule making." Presumably, a document explaining an order is a "final opinion," which would suggest that final declination memos are final opinions within the meaning of 5 U.S.C. Section 552 (a) (2) (A).

The outcome becomes less clear, however, when one considers the likely effects of such a conclusion. One has only to contemplate that current law requires such "final opinions" to be published on the Internet to understand the problem.

Given the compelling privacy interests implicated by most final declination memos, they would have to be heavily redacted before being made public. 5 U.S.C. Section 552 (a) (2) states that "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, …." Moreover, 5 U.S.C. Section 552 (b) states that "this section," meaning the entire FOIA, "does not apply to" matters listed in the

18

exemptions. Thus the standard FOIA exemptions – other than Exemption 5, which was

carved out by *Sears* -- apply to "final opinions" as they do to any other document.

Exemptions that evidently do apply include those dealing with privacy, 5 U.S.C. Section

552 (b) (6) and (7) (C). The privacy interests at stake, of course, are not only those of the

subject of the criminal investigation that did not lead to prosecution but also those of

witnesses, and investigators whose names figure in the investigation. *Dunkelberger v.*

*Department of Justice,* 906 F.2d 779, 781 (D.C. Cir. 1990). Moreover, if final declination

memos are ever prepared after the commencement of grand jury proceedings, the secrecy

requirements of Federal Rule of Criminal Procedure 6 (e) (2) would come into play, also

requiring deletion of factual material before the final declination memo is published.

   The net result, in many cases, might be that published final declination memos

would be stripped of most or all of their factual content, leaving only disconnected legal

observations. It is doubtful that such documents could form a meaningful body of public

"working law." *Sears, supra,* 421 U.S. at 152-153. (The plaintiff acknowledges that, in

his memorandum in support of discovery, [Doc. # 35] 24, he raised the issue of whether

the DOJ Memo might be part of a body of secret law. On further reflection, this is a less

compelling point than it seemed at that time.) Thus a finding that final declination memos

are "final opinions" within the meaning of 5 U.S.C. Section 552 (a) (2) (A) might well

fail to advance the purposes of that provision.

   Courts have held, however, that the *Sears* principles of express adoption or

incorporation by reference apply to documents in addition to "final opinions":

> We need not decide whether these documents are final opinions, however,
> because we do not understand the incorporation principle to be as limited
> as the SEC suggests. ...

19

> In *Sears,* the Court treated the possible incorporation of a document into a Section 5 final opinion as illustrative, not exhaustive, of the ways in which the pre-decisional status of a document may be terminated for purposes of the deliberative process privilege.

*Safecard Services Inc. v. S.E.C.,* 926 F.2d 1197, 1204 (D.C. Cir. 1991). In context, the

reference to "a Section 5 final opinion" is to Section 5 of the Administrative Procedure

Act. *Id.*

Eight years earlier, the D.C. Circuit reached a similar conclusion:

> Nevertheless, we do not think that the *Sears* holding that the government must disclose agency memoranda explaining a decision already made is limited to memoranda promulgating "secret law." The Court in *Sears* only looked to the need to prevent accumulation of secret law as additional support for the independent conclusion that postdecisional memoranda should be released because their publication would not interfere with the consultative process of government decisionmaking.

*Afshar v. Department of State,* 702 F.2d 1125, 1141-1142. (D.C. Cir. 1983), citing *Sears,*

*supra,* 421 US. at 152, 153, 155-156. The *Afshar* court went on to explain that the policy

underlying the philosophy of the FOIA "was not merely to allow citizens whose rights

might be affected to obtain the information necessary for fair dealings with the

government, but the broader policy of ensuring an informed electorate ... vital to the

proper operation of a democracy." *Id.* 1142 (Citations, internal quotation marks and

footnote omitted.)

The present case is extremely unusual. Essentially all the factual material on

which the decision to decline prosecution was based appears to have been made public,

with very limited deletions. Release – Section 1 [Doc. # 17] 1-405. Thus, this case

presents an opportunity that is almost always foreclosed due to privacy considerations –

to inform the public not only of the fact that prosecution has been declined but of the

20

reasons for that decision. Moreover this is an important case, involving the issue of the extent to which persons in sensitive law-enforcement positions are held accountable for their actions. The DOJ Memo may shed light on that issue in all sorts of ways, including illustrating the real-world difficulties with which prosecutors can be faced even when evidence of wrongdoing seems clear. Thus it has significant potential to contribute, albeit in a small way, to the "informed electorate ... vital to the proper operation of a democracy." *Afshar, supra,* 702 F.2d at 1142. The plaintiff respectfully submits that if the DOJ Memo has been adopted as the explanation for the decision to decline prosecution in this case, it should be made public regardless of whether it is a "final opinion" within the meaning of 5 U.S.C. Section 552 (a) (2) (A).

F.  THIS COURT'S CONCLUSION THAT THE FACTS DID NOT SUPPORT THE PLAINTIFF'S MOTION TO CONDUCT DISCOVERY ON WHETHER THE DOJ MEMO WAS ADOPTED AS THE DEPARTMENT'S EXPLANATION FOR THE DECISION TO DECLINE PROSECUTION WAS BASED ON A MISUNDERSTANDING OF THE PLAINTIFF'S ARGUMENT.

This Court stated in its Ruling: "Wood suggests only that the DOJ memo may have been incorporated in the decision of the FBI's OPR Adjudication Unit, because the FBI may have reviewed the DOJ memo in preparing its decision. The OPR decision, however, nowhere references the DOJ Memo." Ruling [Doc. # 63] 24-25, citing OPR Adjudication Unit Addendum [Doc. # 18] at 422-452.

Respectfully, that has never been the plaintiff's theory. In support of the discovery motion the plaintiff did observe that the Adjudication Unit Addendum "discusses the law of perjury and how it applies to the facts of the case, reaching the conclusion that the accused agents 'did not violate any laws.'" Memorandum in support of discovery [Doc. # 35] 21. But that observation was intended only to support the plaintiff's contention that

21

"[t]he prosecutive and disciplinary processes were evidently intertwined to some degree,"

*Id.* 20, which, in turn, was intended to suggest the existence of a plausible possibility that

FBI personnel had been permitted to read the DOJ Memo. The plaintiff explained his

point as follows:

> In any case, if FBI employees were permitted to read the Public
> Integrity Section [DOJ] [M]emo, the plaintiff respectfully submits that the
> Department formally or informally adopted the memo as its position on
> this case, and that it thus falls within an exception to the deliberative
> process privilege. It is inconceivable that the Department would have
> permitted FBI employees to read a memo that did not represent its position
> as the FBI worked on making its own decisions on this case.

*Id.* 21. Put another way, the plaintiff's point was that the Department may have

demonstrated its adoption of the DOJ Memo as its explanation for the decision to decline

prosecution by the **act** of permitting one or more FBI employees to read it.

Moreover, such an act could easily rise to the level of express adoption. If, in

permitting an FBI employee to read the DOJ Memo, an official in a position to speak for

the Public Integrity Section said something to the effect of, "This is why we declined

prosecution," the plaintiff respectfully submits that would constitute an express adoption

within the meaning of *Sears*.

There is considerable reason to believe that FBI personnel may have been

permitted to read the DOJ Memo. Subsection A of Section 9-27.270 of the U.S.

Attorney's Manual reads – and has read since at least September 1997 – as follows:

> Whenever the attorney for the government declines to commence or
> recommend Federal prosecution, he/she should ensure that his/her
> decision and the reasons therefore (sic) are communicated to the
> investigating agency involved and to any other interested agency, and are
> reflected in the office files.

22

Copies of current and September 1997 editions of this section are at Tabs A-3 and A-4,

respectively, to Fourth Declaration of Alexander Wood (Fourth Wood Declaration),

which is at Tab A. The FBI was the investigating agency involved in this case, and an

easy way to communicate the reasons for the decision to decline prosecution would have

been to permit FBI personnel to read the DOJ Memo.

Even if no one in the FBI ever read the DOJ Memo, it is reasonable to

hypothesize that it may have been adopted as the Department's explanation for the

decision to decline prosecution.

In its Ruling [Doc. # 63], this Court denied the plaintiff's Third Motion to Strike

[Doc. # 47], which dealt with certain material in the Supplemental Beck Declaration.

Ruling 14-16, 42. Thus, the record reflects as fact that the handwritten notation,

"Declined JG for LJR 12/30/97", on the face of the DOJ Memo "signifies that Joseph

Gangloff, then Principal Deputy Chief of the Public Integrity Section, had declined

prosecution as acting chief of the section in the absence of Lee J. Radek, the section

chief. There is no further elaboration noted regarding the declination." Supplemental

Beck Declaration [Doc. # 45, Exhibit A], Par. 6. Accordingly, Gangloff was the attorney

for the government who declined to commence Federal prosecution and Section

9-27.270.A. of the U.S. Attorneys' Manual indicates that he should have ensured that his

decision **and the reasons therefor** were "reflected in the office files."

The record of this case, however, includes no indication that Gangloff ever wrote

or directed anyone else to write a separate document setting forth his reasons for

declining prosecution. As the Court noted in its Ruling, the Department's letter to the

plaintiff dated Dec. 20, 2001 said two Criminal Division records within the scope of the

plaintiff's request had been located, the DOJ Memo and an item "previously released to

you in our letter dated July 21, 1999." Beck Declaration [Doc. # 14, Exhibit 6]. See also

Ruling [Doc. # 63] 5. Two items were released with the July 21, 1999 letter, a five

sentence letter dated Jan. 08, 1998 from Radek to Richard M. Rogers, Acting Counsel,

Office of Professional Responsibility (Radek letter), and a document summarizing the

Radek letter in three sentences. Beck Declaration [Doc. # 14, Exhibit 5]. The Radek letter

states, in relevant part, "We have determined that prosecution of the agents is not

warranted." The document summarizing it contains similar language. Neither elaborates

on the basis for that conclusion.

Thus it is clear that the only document in existence that could meet the

requirement of Section 9-27.270.A. of the Manual that the reasons for a decision to

decline prosecution should be "reflected in the office files" is the DOJ Memo.

Section 9-27.150 of the Manual is headed "Non-Litigability." Subsection A reads

– and has read since at least September 1997 -- as follows:

> The principles set forth herein, and internal office procedures adopted
> pursuant hereto, are intended solely for the guidance of attorneys for the
> government. They are not intended to, do not, and may not be relied upon
> to create a right or benefit, substantive or procedural, enforceable at law
> by a party to litigation with the United States.

Copies of current and September 1997 editions of this section are at Tabs A-5 and A-6,

respectively, to the Fourth Wood Declaration, which is at Tab A.

The plaintiff does **not** contend that Section 9-27.270 of the Manual creates any

"right or benefit, substantive or procedural, enforceable at law ...." Rather, the plaintiff's

claim is that this section of the Manual is evidence of the Department's procedures and

forms a sufficient basis for the Court to order discovery on the issue of whether the DOJ

24

Memo has been formally, informally, or expressly adopted as the Department's explanation for declining prosecution and/or incorporated by reference in Gangloff's handwritten decision to decline prosecution, which appears on the memo's face.

The plaintiff respectfully submits that this case illustrates one excellent reason that the *Sears* express adoption/incorporation by reference doctrine should not be limited to "final opinions" within the meaning of 5 U.S.C. Section 552 (a) (2) (A). Consider the following: If Gangloff had complied with Section 9-27.270.A of the Manual by writing an explanation for his decision to decline prosecution and placing it in the Department's file, that document plainly would not be exempt from disclosure under either of the Exemption 5 privileges at issue in this case, the attorney work product and deliberative process privileges. Beck Declaration [Doc. # 14] Par. 23. The attorney work product privilege would be inapplicable because such a document would not have been "prepared in anticipation of litigation or for trial." *Coastal States Gas Corp. v. Department of Energy* 617 F.2d 854, 864 (D.C. Cir. 1980), quoting *Jordan v. U.S. Dep't of Justice,* 591 F.2d 753, 775 (1978). The deliberative process privilege would be inapplicable because such a document would be neither "predecisional," in that it would be an explanation for a decision already made, nor "deliberative," in that it would reflect the decision maker's final opinion rather than "the give and take of the consultative process." *Coastal States, supra,* 617 F.2d at 866. Thus such a document would have to be disclosed in response to an FOIA request pursuant to 5 U.S.C. Section 552 (a) (3) (A) regardless of whether the agency is also required to make it available for inspection and copying pursuant to 5 U.S.C. Section 552 (a) (2) (A). It defies logic to suggest that the result should be different

25

if Gangloff complied with Section 9-27.270.A of the Manual by expressly adopting or

incorporating by reference an advisory memorandum prepared by staff attorneys.

A court provided important guidance in the interpretation of the term "expressly"

in the *Sears* decision in *American Soc. of Pension Actuaries v. I.R.S.,* 746 F.Supp. 188

(D.D.C. 1990), in which it ordered the release of documents containing "analytic backup"

for a government revenue estimate. *Id.* 191. The court observed that the I.R.S. "places too

much weight on the word 'expressly.'" *Id.* 191. It went on to explain:

> The *Sears* requirement of express adoption is designed to ensure that
> FOIA reaches only documents expressing the views actually relied upon
> by the government in making policy....
>     But when, as in this case, the government states a budget estimate
> with numerical specificity, the public is entitled to presume that a
> particular set of calculations and assumptions underlie the estimate. The
> risk that exposing this analytic backup would misrepresent the reasoning
> actually motivating the government decision-maker is minimal.

*Id.* 191-192. Thus express adoption can be inferred from appropriate circumstances.

The *Sears* court noted that the FOIA "does not compel agencies to write opinions

in cases in which they would not otherwise be required to do so. It only requires

disclosure of certain documents which the law requires the agency to prepare or which

the agency has decided for its own reasons to create." *Sears, supra,* 421 U.S. at 161-162,

citing *Sterling Drug Inc. v. FTC,* 450 F.2d 698 (1971). In the present case, the

Department has decided for its own reasons that a record will be created of the reasons

for a decision to decline prosecution. If such a record, in fact, exists, it must be disclosed.

The plaintiff acknowledges that question 7 in his discovery motion [Doc. # 34]

uses the phrase "formally or informally adopted," generally tracking language used in

*Coastal States, supra,* 617 F.2d at 866 and its progeny, rather tracking than the language

of the *Sears* decision. But the standards of express adoption or incorporation by reference

stated in the *Sears* decision are clearly subcategories of the "formal" adoption referred to in *Coastal States* and its progeny. Therefore, there is no inconsistency between the discovery the plaintiff sought in his original discovery motion [Doc. # 34] and what he seeks now. If the Court considers it appropriate, the scope of discovery can be narrowed further by limiting the issues to express adoption and incorporation by reference.

G. THE PLAINTIFF REQUESTS THAT THE COURT TAKE JUDICIAL NOTICE OF THE DOCUMENTS ATTACHED TO THE FOURTH WOOD DECLARATION, ATTACHED AT TAB A.

Pursuant to Federal Rule of Evidence 201 (d), the plaintiff respectfully requests that this Court take judicial notice of the documents attached to the Fourth Wood Declaration at Tab A. "Judicial notice may be taken at any stage of the proceeding." Federal Rule of Evidence 201 (f).

Federal Rule of Evidence 201 (b) provides:

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The plaintiff respectfully submits that the six attachments to the Fourth Wood Declaration easily meet both those standards. Four of the six, those at Tabs A-1, A-2, A-3 and A-5, are subject to easy verification because they came from the Department's Web site and have Web addresses printed on them. The other two documents, at Tabs A-4 and A-6, were photocopied from the September 1997 edition of the United States Attorneys' Manual in the collection of the Connecticut State Library, 231 Capitol Avenue, Hartford, Connecticut 06106. This edition of the Manual is presumably available at other libraries as well and must be accessible to defense counsel.

27

IV. CONCLUSION.

For all the foregoing reasons, it is respectfully requested that the Court grant the Plaintiff's Motion to Alter or Amend Judgment and for Reconsideration, issue an amended judgment excluding the issue of whether the DOJ Memo must be disclosed under the FOIA, and grant the Plaintiff's discovery motion [Doc. # 34] limited to Question 7, "Was the Public Integrity Section [DOJ] [M]emo formally or informally adopted as the Department's statement of reasons for the decision not to prosecute the FBI Special Agents whose conduct was at issue?"

Executed on _____April 14, 2004_____.

Respectfully submitted,
THE PLAINTIFF


Alexander Wood, Pro Se
Address:
Journal Inquirer, Newsroom
306 Progress Drive
P.O. Box 510
Manchester, CT 06045-0510

Telephone: (860) 646-0500, Ext. 345
Facsimile: (860) 646-9867
e-mail: manchwoods@yahoo.com

28

## CERTIFICATION OF SERVICE

This is to certify that I hand-delivered ~~or mailed~~ a copy of the foregoing, first

class, postage prepaid, this 14th day of April, 2004 to the office of:

PATRICK F. CARUSO
ASSISTANT UNITED STATES ATTORNEY
PO BOX 1824
CONNECTICUT FINANCIAL CENTER
157 CHURCH ST
NEW HAVEN, CT 06508

_____
Alexander Wood

29