UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALEXANDER WOOD,                          :
                                         :
            Plaintiff,                   :
                                         :        Civil No. 3: 02 CV 2058 (JBA)
      v.                                 :
                                         :
FEDERAL BUREAU OF                        :
INVESTIGATION AND U.S.                   :
DEPARTMENT OF JUSTICE,                   :
                                         :
            Defendants.                  :
                                         :
                                         :        May 5, 2004

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
TO ALTER OR AMEND JUDGMENT AND FOR RECONSIDERATION**

**I.      Introduction**

The plaintiff, a newspaper reporter, attempted to use the discovery process in this FOIA case to compel officials at the Department of Justice ("DOJ") and/or the FBI to answers his questions under oath. The Court denied plaintiff's discovery motion.[1] Plaintiff now seeks to have the Court: 1) reconsider its denial of his discovery motion; and 2) alter its conclusion that DOJ properly withheld a 14-page prosecution memorandum ("DOJ Memo").[2] The Court should do neither.

Plaintiff claims that the Court committed a manifest error of law in holding that the DOJ Memo was protected by the work-product privilege. Because this claim is without merit, the remaining claims presented in his motion are moot. Furthermore, to the extent plaintiff's filing is intended as a motion for reconsideration, it is a motion for reconsideration in name alone. In substance, it is a vehicle by which he improperly seeks to litigate unavailing, new theories that he failed to raise before judgment entered in this case.

---

[1]  Plaintiff's discovery motion was captioned Plaintiff's Motion For Continuance and Discovery Pursuant to Federal Rule of Civil Procedure 56(f). It is referred to herein as the "discovery motion."

[2]  The Court, in its Ruling, referred to the 14-page memo as the "DOJ Memo." Defendant DOJ, in its earlier briefs, referred to the memo as the "Radek Memo." In the interest of clarity, defendant DOJ refers to the 14-page memorandum hereafter as the "DOJ Memo."

II.     Discussion

A.  Manifest Error of Law

The Court, having examined the DOJ Memo in camera, discussed whether the memo could be withheld under Exemption 5 of the FOIA in Section III.A. of its Ruling.[3] See Ruling at 9-26. In the context of this 17-page analysis, the Court addressed and denied plaintiff's discovery motion, rejecting the various, speculative theories on which it was based. Id. The Court concluded its analysis with the following holding:

> Because the Court finds that the Government has met its burden of showing that the work product privilege applies, and [plaintiff] Wood's evidence has not contradicted the government's evidence or otherwise called the credibility of the declarants into question, Wood is not entitled to discovery. The Court concludes that the Government was entitled to withhold the DOJ memo under Exemption 5."

Ruling at 26. Plaintiff now claims that the Court's Ruling denying his discovery motion incorporated a "manifest error of law." See Pl. Memo.[4] at 6, 13. Specifically, he claims that the work-product privilege might not apply if the DOJ Memo was expressly adopted as a final opinion or a statement of policy, and the Court, therefore, erred by relying on "two decisions – Iglesias v. CIA, 525 F.Supp. 547 (D.D.C. 1981) and Exxon Corp. v. F.T.C., 476 F.Supp. 713 (D.D.C. 1979) – that embody erroneous interpretations of controlling Supreme Court precedents." Pl. Memo at 1. He is incorrect.

The Iglesias and Exxon decisions do not contain erroneous interpretations of binding precedent. The Court, moreover, relied not just on these two decisions, but also on controlling Supreme Court precedent: FTC v. Grollier, Inc., 462 U.S. 19, 28 (1983) and Federal Open Market Committee v. Merrill, 443 U.S. 340, 360 n.23 (1979). See Ruling at 24. As the Court observed, in

---

[3] The Ruling [Document No. 63] is captioned: Ruling on Defendants' Motion for Summary Judgment; Plaintiff's Motion for Partial Summary Judgment; Plaintiff's Motion for a Continuance and Discovery Pursuant to Federal Rule of Civil Procedure 56(f); Plaintiff's First Motion to Strike; Plaintiff's Second Motion to Strike; Plaintiff's Third Motion to Strike. It is referred to herein as the "Ruling."

[4] Plaintiff's Memorandum [Document No. 68] is captioned: Memorandum in Support of Plaintiff's Motion to Alter or Amend Judgment and for Reconsideration. It is cited herein as "Pl. Memo."

Merrill, the Supreme Court clarified its earlier ruling in NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975), explaining that "'the kind of mutually exclusive relationship between final opinions and statements of policy, on one hand, and predecisional communications, on the other, does not necessarily exist between final statements of policy and other Exemption 5 privileges,'" like the work-product privilege. Ruling at 24 (citing and quoting Merill, 443 U.S. at 360 n.23). The cases relied upon by plaintiff to support his claim that the Court committed a manifest error of law – Bristol-Myers Co. v. F.T.C., 598 F.2d 18, 29 (D.C. Cir. 1978) and Niemeier v. Watergate Special Prosecution Force, 565 F.2d 967, 974 (7th Cir. 1977) – are wholly unavailing and were decided before Merill.

After Merill, "it is settled that even if a document is a final opinion or is a recommendation which is eventually adopted as the basis for agency action, it retains its exempt status if it falls properly within the work-product privilege." Iglesias v. CIA, 525 F.Supp. at 559 (citing Merill, 443 U.S. at 360 n.23; Exxon Corp., 476 F.Supp. at 724-26). And "any argument to the effect that the attorney's opinions in question may have become the basis for final agency action is irrelevant for purposes of the work product privilege." Iglesias v. CIA, 525 F.Supp. at 559; see Ruling at 24.

Because this is so, plaintiff's remaining claims are fatally flawed, irrelevant and moot. Furthermore, as is illustrated by the following discussion, the remaining claims are devoid of merit and constitute impermissible, new legal theories.

**B. New Theories**

Plaintiff acknowledges that it is improper to raise arguments in a Rule 59(e) motion or a motion for reconsideration that could, and should, have been made before judgment issued. See Pl. Memo. at p. 5. But this is precisely what he seeks to do.

In support of his discovery motion, the plaintiff originally claimed that before the DOJ Memo could be withheld as work product, discovery was needed to determine whether the memo was pre-decisional. See Memorandum in Support of Plaintiff's Discovery Motion [Document No. 35] at 13-20. The Court rejected this argument. See Ruling 17-21, 26. It held that the record established that

the DOJ Memo was pre-decisional, and protected by the work-product privilege, because James

Gangloff, Principal Deputy Chief of the Public Integrity Section at DOJ, made the final decision to

decline prosecution on December 30, 1997, nearly a month after the memo was prepared. Id. at 21-

22, 26, 17-20.[5]

Plaintiff's original work-product claim having been rejected by the Court, he now claims that

even if the DOJ Memo is work product, there are exceptions to the work-product component of

Exemption 5 that might apply here. He theorizes that the DOJ Memo might have been expressly

adopted/incorporated by reference and used by DOJ as a final opinion or a statement of policy, and

that such use would render the work-product component of Exemption 5 inapplicable. See Pl.

Memo. at 9-26.

Specifically, plaintiff speculates that the DOJ Memo might have been incorporated by

reference as a statement of policy into James Gangloff's' decision to decline prosecution. See Pl.

Memo at 25. He also appears to suggest that there is a "plausible possibility" that Gangloff or some

other Public Integrity Section official might have adopted the DOJ Memo and used it as a statement

of policy to educate or enlighten the FBI as to why prosecution was denied. See Id. at 22, 25.

Plaintiff failed to raise these speculative theories before the Court entered judgment in this

case. In support of his discovery motion, plaintiff did not argue that there were exceptions to the

*work-product component* of Exemption 5. See Memorandum in Support of Plaintiff's Discovery

Motion at 20-23. He argued only that there were exceptions to the *deliberative-process component*

of Exemption 5. Id. at 20-23. He concedes this point in the memorandum supporting his present

motion. See Pl. Memo. at 5. Plaintiff, furthermore, failed to address the issue of possible exceptions

to the work-product component of Exemption 5 in his Reply Brief, which, of course, was filed after

the defendants had fully briefed the work-product issues in their memorandum in opposition to

plaintiff's discovery motion. And the plaintiff never claimed – even in the context of his

---

[5]     Gangloff made the decision as acting Section Chief in the absence of Lee Radek, Section Chief. See Ruling at 21-22.

*deliberative-process argument* – that the DOJ Memo was somehow incorporated by reference into Gangloff's declination.

Plaintiff's new claims, in addition to being improper, are also devoid of merit, because the DOJ Memo was not expressly adopted or incorporated by reference as a final opinion or a statement of policy. Gangloff's decision to decline prosecution is a handwritten note that reads: "Declined JG for LJR 12/30/97." See Ruling at 21.[6] It contains no further elaboration, let alone language that would amount to an express adoption or incorporation by reference. See Supplemental Declaration of Joseph Beck (Exhibit A to Defendants' Memorandum in Opposition to Plaintiff's Discovery Motion) at para. 6. And the record in this case establishes that the DOJ Memo was used, not as a final opinion or a statement of policy, but, rather, for the express and sole purpose of assessing and determining whether criminal prosecution of the particular agents under investigation in this case was warranted. Id. at paras. 4, 5; Ruling at 22.

Plaintiff offers no tangible evidence to contradict the record. He offers no evidence, in other words, to support his claim that, despite the clear and sufficient record in this case, he should be permitted to embark on a discovery expedition. See Ruling at 16-17 (citing and quoting Carney v. Department of Justice, 19 F.3d 807, 812 (2d Cir. 1994)(citations omitted)(where record is sufficient, burden is on the plaintiff to show why discovery should be permitted). Instead, he launches into an irrelevant and incorrect analysis of the United States Attorney's Manual that does not, in any way, advance his effort to obtain discovery.

Plaintiff claims that the United States Attorney's Manual requires that the reason for declining a prosecution should be reflected in DOJ's files. See Pl. Memo. at 23. He then speculates that the DOJ Memo might have been incorporated by reference into Gangloff's declination because

---

[6] The Court's Ruling contains a typographical error that indicates Gangloff's declination read "Declined JG for LJR 12/20/97." See Ruling at 21. The declination was made on December 30, 1997, not December 20, 1997, as the Court correctly notes on page 18 of its Ruling. See id. at 18; Supplemental Declaration of Joseph Beck (Exhibit A to Defendants' Memorandum in Opposition to Plaintiff's Motion for Continuance and Discovery) at para. 6.

the DOJ Memo is "the only document in existence that could meet [this] requirement." See Pl. Memo. at 23-25.

There are at least two problems with plaintiff's speculative reasoning. First, it is irrelevant. Even if Gangloff's declination failed to comport with the United States Attorney's Manual, such a failure would not be evidence of express adoption or incorporation by reference, let alone evidence sufficient to overcome the plain record in this case. Second, plaintiff's speculative reasoning is incorrect. A letter written on January 8, 1998, by Gangloff's boss, Lee Radek, Chief of the Public Integrity Section – which is located in DOJ's files – comports with the guidance of the United States Attorney's Manual by offering a reason why DOJ declined prosecution: the allegations of misconduct in this case, having been reviewed by DOJ, did not warrant prosecution.[7]

Plaintiff relies on the same irrelevant discussion of the United States Attorney's Manual and similar empty reasoning to support his claim that the DOJ Memo might have been expressly adopted and shared with the FBI as a final opinion or a statement of policy. And the response to this wholly speculative claim is the same as that set out above: the record establishes that the DOJ Memo was not used as a final opinion or a statement of policy to educate or enlighten the FBI – or any other agency – on why prosecution was declined. Rather, the DOJ Memo was used for the express and sole purpose of assessing and determining whether criminal prosecution of the agents under investigation in this case was warranted by the Department of Justice.[8]

Thus, plaintiff's irrelevant, speculative theories are without merit. And they fall well short of the threshold one must meet to obtain discovery in a FOIA case. See Carney, 19 F.3d at 812 (citations omitted).

---

[7]   The Radek letter provides, in relevant part: "The Public Integrity Section has completed its review of allegations of misconduct by members of the Federal Bureau of Investigation's Connecticut Fugitive Task Force . . . . We have determined that prosecution of the agents is not warranted." See Notice of Filing Release (Section 2, Section 1A and Referral) [Document No. 18] at Bates No. 615.

[8]   See Supplemental Declaration of Joseph Beck (Exhibit A to Defendants' Memorandum in Opposition to Plaintiff's Motion for Continuance and Discovery) at paras. 4, 5; Ruling at 22.

**III.    Conclusion**

The Court's Ruling does not contain a manifest error of law because "[i]t is settled that even if a document is a final opinion or is a recommendation which is eventually adopted as the basis for agency action, it retains its exempt status if it falls properly within the work-product privilege." Iglesias v. CIA, 525 F.Supp. at 559 (citing Merrill, 443 U.S. at 360 n.23; Exxon Corp., 476 F.Supp. at 724-26).   Plaintiff's specific adoption/incorporation by reference claims and theories are, therefore, moot.  Plaintiff's claims, moreover, constitute  impermissible, new claims that plaintiff failed to raise before judgment entered in this case.  Finally, even if plaintiff's claims are not moot, impermissible, new claims, they are, for the reasons set out above, unavailing and devoid of merit.

The record establishes that the DOJ Memo was not adopted or incorporated by reference as a final opinion or a statement of policy.  This being so, the Court should hold that plaintiff has utterly failed to meet his burden of demonstrating that discovery should be permitted in this FOIA case.  And plaintiff's motion should be denied in all respects.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


PATRICK F. CARUSO
ASSISTANT U.S. ATTORNEY
FED. BAR NO. 17984
P.O. BOX 1824
NEW HAVEN, CT  06508
(203) 821-3700

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing was sent by First Class Mail, postage paid, on May 5, 2004, to:

Alexander Wood
Newsroom
Journal Inquirer
306 Progress Dr.
Manchester, CT 06045-0510


PATRICK F. CARUSO
ASSISTANT U.S. ATTORNEY


MemoOppositionReconsider.wpd