**FORM 1**

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2005 FEB -7 P 3: 48

U.S. ~~DISTRICT COURT~~

---

Alexander Wood
_____

v.                          CIVIL CASE NO. 3:02-cv-2058 (JBA)

Federal Bureau of Investigation and
_____

U.S. Department of Justice

## NOTICE OF APPEAL

1. Pursuant to F. R. A. P. 4(a)(1), <u>Alexander Wood</u> hereby gives notice and
(appealing party)
appeals to the United States Court of Appeals for the Second Circuit from the following

Judgment or Order (attach the Judgment or Order):
Corrected Judgment (Doc. #74); Ruling on motions (Doc. #63);Ruling on Plaintiff's

Motion to Alter or Amend Judgment, etc. (Doc. #73).
_____

_____

2. The Judgment /Order in this action was entered on <u>December 17, 2004.</u> .
(date)

_____
Signature

Alexander Wood
_____
Print Name
Newsroom -- Journal Inquirer
P.O. Box 510

306 Progress Drive
Manchester, CT 06045-0510
_____
Address

Date: February 7, 2005
_____

(860) 646-0500,Ext. 345
_____
Telephone Number

<u>Note: You may use this form to take an appeal provided that it is received by the Office of the Clerk of the U.S. District Court within 30 days of the date on which the judgment was entered (60 days if the United States or an officer or agency of the United States is a party).</u>

74

peek

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Alexander Wood                         :
                                       :
                                       :
v.                                     :        No. 3:02cv2058 (JBA)
                                       :
Federal Bureau of Investigation        :
and U.S. Department of Justice         :

Corrected Judgment

This matter came on for consideration on defendant's Motion for Summary Judgment and plaintiff's Cross-Motion for Partial Summary Judgment before the undersigned.

On March 31, 2004, the Court filed a Ruling and Order granting in part and denying in part defendant's Motion for Summary Judgment, and granting in part and denying in part plaintiff's Motion for Partial Summary Judgment.

There being no issues for trial, it is therefore ORDERED and ADJUDGED that summary judgment is entered in accordance with the Court's March 31, 2004 Ruling [Doc. # 63] and the case is closed.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 15th day of December, 2004

ECD   12/17/04

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Alexander Wood                    :

                                  :

v.                                :        No. 3:02cv2058 (JBA)

                                  :

Federal Bureau of Investigation  :
and U.S. Department of Justice    :

Rulings on Plaintiff's Motion to Alter or Amend Judgment and for
Reconsideration [Doc.# 67] and on Plaintiff's Motion to Correct
Judgment [Doc. # 65]

Plaintiff Alexander Wood, a reporter for the Journal

Inquirer newspaper of Manchester, Connecticut, seeks

reconsideration of this Court's determination that a memorandum

written by two staff attorneys from the Department of Justice's

Public Integrity Section was properly withheld under Exemption 5

of the Freedom of Information Act ("FOIA").  See Wood v. F.B.I.,

312 F. Supp. 2d 328 (D. Conn. 2004).  In particular, Wood seeks

reconsideration of denial of discovery on his claim that the DOJ

and the FBI expressly incorporated by reference and adopted this

memorandum as a statement of agency law or policy, and argues

that this Court relied on erroneous interpretations of

controlling Supreme Court precedent in concluding that the

incorporation by reference exception does not apply to work

product.  The Court disagrees.

The standard for granting a motion for reconsideration "is

strict, and reconsideration will generally be denied unless the

1

moving party can point to controlling decisions or data that the
court overlooked--matters, in other words, that might reasonably
be expected to alter the conclusion reached by the court."
Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995)
(citations omitted).  Reconsideration is appropriate only "if
there has been an intervening change in controlling law, there is
new evidence, or a need is shown to correct a clear error of law
or to prevent manifest injustice."  U.S. v. Sanchez, 35 F.3d 673,
677 (2d Cir. 1994) (citations omitted).

The Court's decision [Doc. # 63] acknowledged the tension in
NLRB v. Sears, 421 U.S. 132 (1975), between the Supreme Court's
conclusion that if a document previously covered by Exemption 5
was incorporated by reference into a final opinion, then it could
not be withheld under Exemption 5, see id. at 161, and the its
conclusion that a document that might otherwise be deemed a final
opinion, necessitating disclosure under FOIA, would nonetheless
be protected as work product, see id. at 160.  The tension in
NLRB was clarified by Federal Reserve v. Merill, 443 U.S. 340
(1979), which observed that "the kind of mutually exclusive
relationship between final opinions and statements of policy, on
one hand, and predecisional communications, on the other, does
not necessarily exist between final statements of policy and
other Exemption 5 privileges."  Id. at 360 n. 23.  Although
dicta, the Supreme Court's discussion of work product has clearly

2

signaled an intention to exempt work product "categorically" under Exemption 5 of FOIA. See also FTC v. Grolier, Inc., 462 U.S. 19, 28 (1983). Authority in this circuit supports the notion that work product is exempt even if it is adopted as the basis for agency action. See A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 146-47 (2d Cir. 1994) (Work product is exempt under FOIA even if the documents were "prepared in anticipation of closing the investigation."). Plaintiff has not identified controlling authority ignored in this Court's prior decision, and therefore there is no basis for reconsideration of the conclusion that an "incorporation by reference" theory is not viable in this case.

Accordingly, plaintiff's Motion to Alter or Amend Judgment and for Reconsideration [Doc. # 67] is DENIED. Plaintiff also moves to correct the judgment that entered from the Court's prior ruling. This motion [Doc. # 65] is GRANTED, as the Court agrees that the prior judgment incorrectly described the Court's decision. A corrected judgment is attached to this ruling.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 15th day of December, 2004.

3

United States District Court
District of Connecticut
FILED AT        NEW HAVEN

3/3/2004

Kevin F. Rowe, Clerk

By_____
         Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Alexander Wood                    :
                                  :
v.                                :        No. 3:02cv2058 (JBA)
                                  :
Federal Bureau of Investigation   :
and U.S. Department of Justice    :

Ruling on Defendant's Motion for Summary Judgment [Doc. # 19];
Plaintiff's Motion for Partial Summary Judgment [Doc. # 24];
Plaintiff's Motion for Continuance and Discovery Pursuant to
Federal Rule of Civil Procedure 56(f) [Doc. # 34]; Plaintiff's
Motion to Strike [Doc. # 39]; Plaintiff's Second Motion to Strike
[Doc. # 43]; Plaintiff's Third Motion to Strike [Doc. # 47].

This case arises under the Freedom of Information Act

("FOIA"). Plaintiff Alexander Wood ("Wood"), a reporter for the

Journal Inquirer newspaper of Manchester, Connecticut, requested

documents from defendants the Federal Bureau of Investigation

("FBI") and the U.S. Department of Justice ("DOJ"), related to

the investigation of FBI special agents who had been accused of

misrepresenting information in arrest warrant affidavits

submitted to United States Magistrate Judges. In response to

Wood's FOIA request, the Department of Justice located two

responsive records and released one document, but withheld in

full a memorandum from the DOJ's Public Integrity Section under

Exemptions 5, 6 and 7(C) of FOIA. The FBI located and released

447 pages of responsive documents, but redacted names and other

identifying information on many of the documents pursuant to

1

exemptions 6 and 7(C) of FOIA.  Wood challenges the withholding
of the DOJ memorandum, and seeks the release of information
identifying the government employees investigating the alleged
misconduct, and identifying Supervisory Special Agent Ralph A.
DiFonzo Jr. as the subject of disciplinary action or as the
subject of any personnel appeal.

Pending before the Court are Defendant's Motion for Summary
Judgment [Doc. # 19]; Plaintiff's Motion for Partial Summary
Judgment [Doc. # 24]; Plaintiff's Motion for Continuance and
Discovery Pursuant to Federal Rule of Civil Procedure 56(f) [Doc.
# 34]; Plaintiff's Motion to Strike [Doc. # 39]; Plaintiff's
Second Motion to Strike [Doc. # 43]; and Plaintiff's Third Motion
to Strike [Doc. # 47].

For the reasons discussed below, the Court concludes that
the DOJ memorandum was properly withheld as work product under
Exemption 5, and that the names of the FBI and DOJ employees
involved in the investigation were properly withheld under
Exemption 7(C), but not under Exemption 6.  In addition, the
Court finds that information identifying Special Agent DiFonzo is
not exempt from disclosure.  Accordingly, defendant's Motion for
Summary Judgment [Doc. # 19] is GRANTED in part and DENIED in
part, and plaintiff's Motion for Partial Summary Judgment [Doc. #
24] is GRANTED in part and DENIED in part.  Plaintiff's Motion
for Continuance and Discovery [Doc. # 34] is DENIED, as the two

2

declarations submitted by the Department of Justice contained reasonable specificity of detail adequate to meet the Government's burden, and carry a presumption of good faith. Finally, because the Court relied on the evidence in the record, not the 56(a)(2) statement, found the factual statements in the defendants' declarations supported by personal knowledge, and did not rely on the unsupported conclusions or legal opinions contained in the declarations, plaintiff's three motions to strike [Docs. ## 39, 43, 47] are DENIED.

## I.  Background

In July 1996, Gregory B. Dillon, a Supervisory Inspector in the Connecticut Chief State's Attorney's Office, who participated in a joint state-federal task force known as the Connecticut Fugitive Task Force (CFTF), accused several FBI agents assigned to the CFTF of falsifying information in arrest warrant affidavits submitted to United States Magistrate Judges.  See Declaration of Gregory B. Dillon, Feb. 21, 2003 [Doc. # 25, Ex. B] at ¶¶ 5-7.  Investigations followed in the Department of Justice's Public Integrity Section and the FBI's Office of Professional Responsibility, after which the DOJ declined criminal prosecution, and the FBI imposed administrative discipline which included, for one agent, a five day suspension and six month probation that was later reduced, on administrative appeal, to a letter of censure.

3

Wood's FOIA request, filed in November 1998, requested all documents related to the investigation of these accusations. <u>See</u> Letter from Alexander Wood to Department of Justice, Criminal Division, Office of FOIA, November 2, 1998 [Doc. # 14, Ex. 1]; <u>see also</u> Letter from Alexander Wood to Thomas J. McIntyre, January 7, 1999 [Doc. # 14, Ex. 3] (supplementing original FOIA request). The DOJ's Criminal Division processed Wood's request and forwarded it to the Office of Professional Responsibility, the Federal Bureau of Investigation, and the Executive Office of U.S. Attorneys. <u>See</u> Memorandum from Thomas J. McIntrye, Chief FOI/PA Unit, Office of Enforcement Operations, Criminal Division, to Richard Rogers, Office of Professional Responsibility, November 17, 1998 [Doc. # 14, Ex. 2].

**The Department of Justice Response:**

In response to Wood's request, DOJ released two records on July 21, 1999 from the Office of Professional Responsibility after redacting the name of the FBI Special Agent under investigation pursuant to 5 U.S.C. § 552(b)(6) and (7)(C). <u>See</u> Letter of Thomas McIntyre to Alex Wood, July 21, 1999 [Doc. # 14, Ex. 5]. The documents released included a letter from the DOJ's Public Integrity Section and a memorandum of the Office of Professional Responsibility, both stating that the Public Integrity Section had completed its review of the allegations of misconduct by members of the FBI's Connecticut Fugitive Task

4

Force ("CFTF") and decided not to prosecute the agents, and that administrative discipline of the CFTF's coordinator was being considered.[1]

On December 20, 2001, the DOJ informed Wood that a search of the Public Integrity Section records revealed two documents responsive to his request, including one that had previously been released to Wood, and one which was being withheld in full pursuant to 5 U.S.C. § 552(b)(5), (6), and (7)(C) & (D).  The letter informed Wood that the document being withheld was a 14 page Memorandum dated December 2, 1997 by James Cooper and John Scoot, Trial Attorneys, Public Integrity Section to Lee Radek, Chief, Public Integrity Section ("DOJ Memo").  See Letter from Thomas J. McIntyre to Alex Wood, December 20, 2001 [Doc. # 14, Ex. 6].  Wood filed an administrative appeal of the DOJ's partial denial of his FOIA request, and his appeal was denied on October

---

[1] See Letter from Lee J. Radek, Chief, Public Integrity Division to Richard M. Rogers, Acting Counsel, office of Professional Responsibility, January 8, 1998 [Doc. # 14, Ex. 5] ("The Public Integrity Section has completed its review of allegations of misconduct by members of the Federal Bureau of Investigation's Connecticut Fugitive Task Force (CFTF).  We have determined that prosecution of the agents is not warranted.  As we have discussed with FBI OPR representatives, administrative discipline of the CFTF's coordinator, Special Agent [b6, 7C] is under consideration.  Our file is closed."); see also Department of Justice, Office of Professional Responsibility Incoming Coversheet [Doc. # 14, Ex. 5] ("1/12/98: By letter to OPR dated 1/8/98, PIS/CRM Chief Radek informed that office has determined that the prosecution of the agents is not warranted.  As discussed with FBI/OPR, administrative discipline of SA [b6, 7C] is under consideration.  PIS/CRMs file is closed.").

5

3, 2002.  See Letter of Alexander Wood to Office of Information
and Privacy, U.S. Department of Justice, February 25, 2002 [Doc.
# 14, Ex. 7]; Letter from Richard Huff, Co-Director, Office of
Information and Privacy, to Alexander Wood, October 3, 2002 [Doc.
# 14, Ex. 12].[2]  Wood's suit, brought in this court on November
20, 2002, challenges the withholding of the DOJ Memo under
Exemption 5.

   **The FBI Response:**

   After Wood's FOIA request was forwarded to the FBI, the FBI
located 447 non-duplicate pages of responsive documents, and
released 254 pages in full and 193 pages in part.  See
Declaration of Carol L. Keeley, Assistant Section Chief,

---

   [2]On February 25, 2002, Wood also wrote to Thomas McIntyre,
Chief of the FOIA/PA unit, stating that McIntyre's December 20,
2001 letter partially denying his FOIA request contained no
reference to the issue of discretionary release of the memorandum
at issue.  See Letter of Alexander Wood to Thomas McIntyre,
February 25, 2002 [Doc. # 14, Ex. 9].  By letter dated April 9,
2002, McIntyre informed Wood that "Although Attorney General
Reno's discretionary disclosure policy was repealed by a
memorandum of Attorney General Ashcroft dated October 12, 2001, I
have nevertheless again examined the single document at issue.
After reviewing this document I have concluded that there is an
ample legal basis to withhold it pursuant to Exemption 5 of the
FOIA, 5 U.S.C. § 552(b)(5).  Moreover, there is no question is my
mind that disclosure of this type of material would have a
profoundly adverse effect on the ability of departmental
attorneys to express their candid legal opinions with regard to
significant legal and policy matters.  Consequently, I am unable
to conclude that this document should be disclosed, even under
the standards prevailing at the time your request was made."  See
Letter of Thomas McIntyre to Alexander Wood, April 9, 2002 [Doc.
# 14, Ex. 11].

Record/Information Dissemination Section, Records Management
Division, Federal Bureau of Investigation, May 28, 2003 [Doc. #
15] at ¶ (9) n. 4-5. The released documents included reports of
interviews undertaken in the course of the investigation, reports
of factual findings by the investigators, analyses of relevant
law, correspondence of various officials within the FBI and DOJ
regarding the status of the investigation, the decision from the
Adjudication Unit of the FBI's Office of Professional
Responsibility, the letters to the accused special agents setting
forth the administrative discipline ordered, the appeal of the
special agent who received a five day suspension, and the
decision, on appeal, reducing the five day suspension to a letter
of censure. The documents disclosed the names of the special
agents under investigation and the findings of the investigation,
but redacted the names of the special agents when connected to a
specific finding or to the specific form of discipline each
received. See generally Notice of Filing of Release (Section 1)
[Doc. #17]; Notice of Filing of Release (Section 2, Section 1A
and Referrals) [Doc. # 18]. The documents also revealed the
names of the higher-level officials responsible for the
investigations and the ultimate decisions regarding the accused
agents, but redacted the names and other information identifying
other employees of the FBI and DOJ involved in the investigation.
See id. All of the redactions were made pursuant to exemptions 6

7

and 7(C) of FOIA.  In this suit, Wood challenges the withholding
of information identifying the FBI and DOJ employees involved in
the investigation, and identifying Supervisory Special Agent
Ralph A. DiFonzo as the subject of disciplinary action or the
subject of any personnel appeal.


II.  **Standard**

FOIA establishes "'a general philosophy of full agency
disclosure unless information is exempted under clearly
delineated statutory language.'"  National Labor Relations Board
v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975) (quoting S.
Rep. 813, 89th Cong., 1st Sess., 3 (1965)).  Judicial review of an
agency's response to a FOIA request is de novo.  See Hopkins v.
Dept' of Housing and Urban Development, 929 F.2d 81, 83 (2d Cir.
1991).

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  "In order to prevail on a motion for summary judgment in
a FOIA case, the defending agency has the burden of showing that
its search was adequate and that any withheld documents fall
within an exemption to the FOIA."  Carney v. U.S. Dep't of

8

Justice, 19 F.3d 807, 812 (2d Cir. 1994) (citing 5 U.S.C. §
552(a)(4)(B); EPA v. Mink, 410 U.S. 73, 79 (1973)). Exemptions
are to be construed narrowly. See id. Summary judgment may be
granted on the basis of agency affidavits "if they contain
reasonable specificity of detail rather than merely conclusory
statements, and if they are not called into question by
contradictory evidence in the record or by evidence of agency bad
faith." Grand Central Partnership, Inc. v. Cuomo, 166 F.3d 473,
478 (2d Cir. 1999) (internal quotation omitted) (emphasis
omitted).


III.  Discussion

     A.  DOJ Memorandum: Exemption 5

     Exemption 5 of FOIA protects from disclosure "inter-agency
or intra-agency memorandums or letters which would not be
available by law to party other than an agency in litigation with
the agency . . . ." 5 U.S.C. § 552(b)(5).  Under Exemption 5,
therefore, documents that would not be subject to discovery in
private litigation, such as those protected by the attorney-
client privilege, work product privilege, or executive privilege,
are properly withheld by the agency.  See Grand Central
Partnership, Inc., 166 F.3d at 481.

     The "executive privilege," or "deliberative process
privilege," is meant to protect the "decision making processes of

9

government agencies." See NLRB, 421 U.S. at 150 (internal

quotation omitted). The exemption of deliberative documents is

designed to aid executive decisionmaking by:

> assur[ing] that subordinates within an agency will feel
> free to provide the decisionmaker with their
> uninhibited opinions and recommendations without fear
> of later being subject to public ridicule or criticism;
> . . . protect[ing] against premature disclosure of
> proposed policies before they have been finally
> formulated or adopted; and . . . protect[ing] against
> confusing the issues and misleading the public by
> dissemination of documents suggesting reasons and
> rationales for a course of action which were not in
> fact the ultimate reasons for the agency's action.

Grand Central Partnership, 166 F.3d at 481. (internal quotation
omitted).

To fall within the deliberative process privilege, a document

must be both "pre-decisional," that is, "prepared in order to

assist an agency decisionmaker in arriving at his decision," and

"deliberative," or "actually . . . related to the process by

which policies are formulated." Grand Central Partnership, 166

F.3d at 482 (internal quotation omitted).

Exemption 5 also protects attorney work product, which

include materials prepared in anticipation of litigation. See

Hickman v. Taylor, 329 U.S. 495, 510-11 (1947). A document is

considered prepared "in anticipation of litigation" if "'in light

of the nature of the document and the factual situation in the

particular case, the document can fairly be said to have been

prepared or obtained because of the prospect of litigation.'"

U.S. v. Adlman, 134 F.3d 1192, 1202 (2d Cir. 1998) (quoting

10

Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8
Federal Practice & Procedure § 2024, at 343 (1994)).  Litigation
need not result.  Thus, "the reports and recommended action with
respect to the status of an investigation submitted before any
final decision is made as to the course an investigation qualify
as documents prepared in anticipation of litigation."  <u>A
Michael's Piano, Inc. v. Federal Trade Commission</u>, 18 F.3d 138,
146-47 (2d Cir. 1994).

        At its core, the work product privilege protects the
"memoranda prepared by an attorney in contemplation of litigation
which set forth the attorney's theory of the case and his
litigation strategy." <u>NLRB</u>, 421 U.S. at 154.  Much like the
deliberative process privilege, the work product privilege is
based on the assumption that the provision of legal advice or the
preparation for trial would not be efficient, frank, or fair if
there was a risk that the attorney's thoughts or strategy would
be revealed.  <u>See Hickman</u>, 329 U.S. at 510.  Unlike the
deliberative process privilege, however, a document need not be
"deliberative" to qualify as work product.  Under the civil
discovery rules, the work product privilege includes factual as
well as deliberative materials prepared in anticipation of
litigation.  The civil rules allow disclosure of factual work
product only upon showing of "substantial need," and provide

11

heightened protection for deliberative materials.[3]  <u>See</u> Fed. R.

Civ. P. 26(b)(3); <u>A Michael's Piano, Inc.</u>, 18 F.3d at 146; <u>Tax</u>

<u>Analysts v. Internal Revenue Service</u>, 117 F.3d 607, 620 (D.C.

Cir. 1997).  The "test" for Exemption 5 is "whether information

'would routinely be disclosed in private litigation.'"  <u>A</u>

<u>Michael's Piano</u>, 18 F.3d at 146 (quoting <u>NLRB</u>, 421 U.S. at 149 n.

16)(internal quotation omitted).  Under FOIA, therefore, all work

product is exempt, regardless of whether it is factual or

deliberative.

Here, the government seeks to withhold in full a 14 page

memorandum dated December 2, 1997 by two trial attorneys in the

DOJ's Public Integrity Section to Lee Radek, Chief of the Public

Integrity Section ("DOJ Memo").  <u>See</u> Letter from Thomas J.

McIntyre to Alex Wood, December 20, 2001 [Doc. # 14, Ex. 6].  The

Government asserts that both the deliberative process and work

product privileges apply and satisfy the requirements of

Exemption 5.  In support, the Government has submitted a

declaration and supplemental declaration by Joseph S. Beck, a

litigation attorney for the DOJ Criminal Division's Freedom of

_____

[3]Fed. R. Civ. P. 26(b)(3) allows discovery of materials
"prepared in anticipation of litigation or for trial" "only upon
a showing that the party seeking discovery has substantial need
of the materials."  But even if the required showing has been
made, "the court shall protect against disclosure of the mental
impressions, conclusions, opinions, or legal theories of an
attorney or other representative of a party concerning the
litigation."

Information Act/Privacy Act Unit. <u>See</u> Declaration of Joseph S. Beck, May 28, 2003 [Doc. # 14] at ¶ 1; Supplemental Declaration of Joseph Beck, August 8, 2003 [Doc. # 45, Ex. A] at ¶1.  Beck describes the DOJ memo as

> a communication from two Public Integrity Section staff attorneys to the Chief of their section. This document contains a discussion concerning the allegations of misconduct and the investigation of the allegations and sets forth the attorneys' analysis, theories, recommendations and discussion of significant issues and facts used to evaluate the matter.  This document therefore reflects the attorneys' thoughts, impressions, and understanding of factors to be considered in the course of reviewing and making prosecutive decisions as well as specific facts selectively relied upon by the attorneys.

Declaration of Joseph S. Beck, May 28, 2003 [Doc. # 14] at ¶ 23.

Beck states that the memo was prepared "for the express purpose of giving [the staff attorneys'] analyses and opinions on contemplated litigation," and that the memo "was used for the sole purpose of determining whether criminal prosecution of the FBI agents under investigation in this case was warranted." Supplemental Declaration of Joseph Beck, August 8, 2003 [Doc. # 45, Ex. A] at ¶¶ 4, 5.  According to Beck, the Public Integrity Section made a final decision to decline prosecution after the memo was completed.  As he explains:  "The face of the memo bears a handwritten notation: 'Declined JG for LJR 12/30/97.'  This notation signifies that Joseph Gangloff, then Principal Deputy Chief of the Public Integrity Section, had declined prosecution as acting chief of the section in the absence of Lee J. Radek,

13

the section chief."  Supplemental Declaration of Joseph Beck,

August 8, 2003 [Doc. # 45, Ex. A] at ¶6.

Wood argues that the Beck declarations fail to demonstrate

that the DOJ memo was properly withheld under Exemption 5.

First, relying on Fed. R. Civ. P. 56(e),[4] he argues that several

portions of the declarations should be stricken because they lack

foundation as to Beck's basis of knowledge or are speculative.[5]

See Plaintiff's Plaintiff's Second Motion to Strike [Doc. # 43];

Plaintiff's Third Motion to Strike [Doc. # 47].  In particular,

of those portions cited above, Wood has moved to strike the

statement that the memo "was used for the sole purpose of

determining" whether criminal prosecution was warranted, and the

statement interpreting the handwritten note on the memo.  As to

the first statement, Wood argues that Beck provides no basis for

purporting to know all purposes for which the DOJ Memo was used

over a more than five year time period.  As to the second, Wood

states that the handwritten note is ambiguous, and that Beck

provides no basis for his interpretation.

---

[4]Fed. R. Civ. P. 56(e) provides that "[s]upporting and
opposing affidavits shall be made on personal knowledge, shall
set forth such facts as would be admissible in evidence, and
shall show affirmatively that the affiant is competent to testify
to the matters stated therein."

[5]Wood also argues that the portions of the declarations that
contain no more than legal argument or conclusion should be
stricken.  The Court has relied only on the factual assertions,
not the legal argument, in the declarations.

14

Beck's declaration states that he is responsible for reviewing the FOIA processing files that have been compiled, and consulting with the FOIA Unit Chief and with the supervisory paralegals to confirm that determinations to withhold or to release records of the Criminal Division accord with the requirements of FOIA. See Beck Declaration [Doc. # 14] at ¶ 2. Beck also affirms, "I make this declaration on the basis of information acquired through the performance of my official duties." Id. at ¶ 3; Beck Supplemental Declaration [Doc. # 45, Ex. A] at ¶ 2. "Affidavits submitted by an agency are accorded a presumption of good faith." Carney, 19 F.3d at 812 (internal quotation omitted). Moreover, generally an "affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e)." Id. at 814 (citations omitted). Here, Beck's declaration establishes that he is an attorney in the Criminal Division, that he personally reviewed the DOJ memo in question, and that he acquired the information in the declaration as part of his official duties. By reviewing the memo at issue, Beck would be able to ascertain the purpose for which it was written, and the handwritten note on top reveals how the memo was used. Although Wood argues that the handwritten note is ambiguous, Beck's statement that he acquired the information in the performance of his official duties is sufficient, when interpretation of the note requires no more than

15

knowledge of the personnel and business practices of the

Division.  Beck's declaration thus provides a sufficient basis

for finding personal knowledge under Fed. R. Civ. P. 56(e).[6]

Second, Wood argues that discovery is necessary before he

can successfully challenge the Government's withholding of the

memo, because the Beck declarations leave unanswered several

important questions about whether the memo was produced before

the decision was made to decline prosecution, whether the memo

was prepared because of the prospect of litigation, whether the

memo was adopted as policy by the DOJ, and whether any privileges

were waived.  See Plaintiff's Motion for Continuance and

Discovery Pursuant to Federal Rule of Civil Procedure 56(f) [Doc.

# 34].  "[D]iscovery relating to the agency's search and the

exemptions it claims for withholding records generally is

unnecessary if the agency's submissions are adequate on their

face.  When this is the case, the district court may 'forgo

discovery and award summary judgment on the basis of the

affidavits.'"  Carney, 19 F.3d at 812 (citations omitted).  If the

agency declarations are sufficient to meet the government's

---

[6]Wood has also moved to strike several statements in
Defendants' Local Rule 56(a)(2) Statement on grounds that the
statements are unsupported by the record.  See Plaintiff's Motion
to Strike [Doc. # 39].  It deciding a summary judgment motion,
however, it is necessary to look to the record evidence, and
inappropriate to rely on the 56(a)(2) statement.  See Giannullo
v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003).  As the
Court has relied only on the underlying evidence, not defendant's
56(a)(2) statement, plaintiff's motion is denied as moot.

16

burden, then the burden shifts to the plaintiff to "make a
showing of bad faith on the part of the agency sufficient to
impugn the agency's affidavits or declarations, or provide some
tangible evidence that an exemption claimed by the agency should
not apply or summary judgment is otherwise inappropriate." <u>Id</u>.
(citations omitted).  It is necessary, therefore, to assess the
adequacy of the Government's submission as support for its
withholding under Exemption 5, and to determine whether the
plaintiff has contradictory evidence or evidence of bad faith.
Because the work product and deliberative process privileges are
independent bases for Exemption 5, the Court will address first
the work product privilege, dealing with each of Wood's
challenges in turn.

    1.  **Timing of the DOJ Memo**

    As discussed above, a memo prepared after a final decision
to decline prosecution was made could not be deemed prepared "in
anticipation of litigation."  <u>See</u> <u>A Michael's Piano, Inc.</u>, 18
F.3d at 146-47.  Because the work product privilege here applies
only to a pre-decisional document, the central question in
dispute in this case is whether the DOJ memo was prepared prior
to the final decision to decline prosecution.  Beck's
declarations, which establish that the DOJ Memo was prepared on
December 2, 1997 for the purpose of determining whether to pursue
criminal prosecution of the FBI agents, and that the Principal

17

Deputy Chief of the Public Integrity Section, writing on behalf
of the section chief, declined prosecution on December 30, 1997,
if accepted, are sufficient to meet the government's burden of
showing that the memo was pre-decisional.

Wood challenges the Government's declarations, and states
that two Case Update Forms prepared by the FBI at the time the
Public Integrity Section reviewed the matter cast doubt on Beck's
conclusion that a final decision to decline prosecution was made
on December 30, 1997, approximately one month after the DOJ Memo
was submitted. See Supplemental Declaration of Joseph Beck,
August 8, 2003 [Doc. # 45, Ex. A] at ¶6.  First, Wood points to a
Case Update Form dated November 20, 1997, which indicates that,
on that date, a "Unit Chief" discussed the case with Joshua R.
Hochberg, the Deputy Chief of the Public Integrity Section, and
that Hochberg "advised captioned case was now assigned to John
Scott and a prosecutive opinion will be rendered in one week.  He
said the Public Integrity Section will probably decline
prosecution in this matter."  See Notice of Filing of Release
(Section 1) [Doc. # 17] at 397 (Case Update Form, Nov. 20, 1997).
Wood argues that Hochberg's prediction that prosecution would
"probably" be declined suggests that substantive discussions with
the decision-maker had likely already taken place and thus the
decision may have been made, with the memo a mere formality.
Second, Wood notes that a Case Update Form dated December 11,

18

1997 states: "UC (deletion) spoke with Public Integrity Section
Attorney James Cooper regarding this matter. Mr. Cooper said
that a declination memorandum has been prepared in this matter.
OPR will be advised when the declination has been approved at the
Public Integrity Section." See Notice of Filing of Release
(Section 1) [Doc. # 17] at 398 (Case Update Form, December 11,
1997). Here, Wood focuses on the use of the word "when," which
he argues indicates that "Cooper conveyed to the UC complete
confidence that the declination would be approved, indicating
that the actual decision had been made by December 11, 1997."
Plaintiff's Reply to Defendant's Memorandum in Opposition to
Plaintiff's Motion for a Continuance and Discovery [Doc. # 54] at
6.

The evidence on which Wood relies fails to rebut the
government's declarations. At most, the Case Update Forms
indicate that substantive discussions within the Public Integrity
Unit had taken place prior to the drafting of the DOJ Memo, and
that a preliminary decision was reached to decline prosecution.
But, as the use of the words "probably," and "when," to refer to
the ultimate decision to decline prosecution plainly indicates,
the final decision had not yet been made at the time the Case
Update Forms were written. For the purposes of determining
whether the work product privilege applies when litigation does
not result, it is only the final decision by the ultimate

19

decisionmaker that is significant.

The Second Circuit considered an analogous challenge in which "some of the withheld documents may have been prepared in anticipation of closing the investigation" in A Michael's Piano, 18 F.3d at 146. The Court there concluded that the work product privilege applied as long as the investigation had not yet been closed at the time the documents were prepared. See id. ("[T]he fact that staff members may have thought that litigation might not ever occur does not take the documents out of the scope of those materials exempt because they were created in anticipation of litigation."). Like A Michael's Piano, here the record establishes that the investigation had not yet been closed at the time the memo from the Public Integrity Section staff attorneys was submitted to the section chief on December 2, and in fact after the memo's submission one of its authors continued to wait for the declination to be "approved" by his superiors. See Case Update Form, December 11, 1997 [Doc. # 17] at 398; see also Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980) ("The identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made.").

20